97 F.3d 185
 David THURMAN, Plaintiff-Appellant,
v.
Richard GRAMLEY, et al., Defendants-Appellees.
Marshall JACKSON, Plaintiff-Appellant,
v.
Dean NEITZKE, et al., Defendants-Appellees.
Benny Michael BROWN, Plaintiff-Appellant,
v.
Lawrence E. FELDKAMP and Federal Bureau of Prisons,
Defendants-Appellees.
Eddie Lee WALKER, Plaintiff-Appellant,
v.
Kenneth PERRE and Bruce Hills, Defendants-Appellees.
Douglas JACKSON, Petitioner-Appellant,
v.
J.J. CLARK, Warden, Federal Prison Camp, Terre Haute,
Respondent-Appellee.
 Nos. 96-1062, 96-2109, 96-2405, 96-2685 and 96-3096.
 United States Court of Appeals,
Seventh Circuit.
 Submitted Sept. 3, 1996.
Decided Sept. 23, 1996.
 
 David Thurman, Pontiac, IL, submitted pro se.
 Marshall Jackson, Pendleton, IN, submitted pro se.
 Benny M. Brown, Marion, IL, submitted pro se.
 Eddie L. Walker, Waupun, WI, submitted pro se.
 Douglas Jackson, Terre Haute, IN, submitted pro se.
 Rita M. Novak, and Mortin E. Freedman, Office of the Attorney General, Chicago, IL, submitted for Larry Roper, Francis Melvin and Richard B. Gramley.
 Suzann W. Lupton, Office of the Attorney General, Indianapolis, IN, submitted for Dean Neitzke, Carol S. Dawson, John T. Nonweiler, Mary E. Smith, and Dave Curtiss.
 J. Christopher Moore, Office of the U.S. Attorney, Benton, IL, submitted for Lawrence E. Feldkamp and Federal Bureau of Prisons.
 Charles D. Hoornstra, James E. Doyle and Lisa P. Taylor, Office of the Attorney General, Department of Justice, Madison, WI, submitted for Kenneth Perre and Bruce Hills.
 Judith A. Stewart, Office of the U.S. Attorney, Indianapolis, IN, submitted for Jeffrey J. Clark.
 Before POSNER, Chief Judge, and BAUER and EASTERBROOK, Circuit Judges.
 EASTERBROOK, Circuit Judge.
 
 
 1
 We have consolidated for decision five cases that present questions under the Prison Litigation Reform Act, Title VIII of Pub.L. 104-134, 110 Stat. 1321 (effective April 26, 1996) ("the Act"). Together with Martin v. United States, 96 F.3d 853 (7th Cir. 1996), and Abdul-Wadood v. Nathan, 91 F.3d 1023 (7th Cir.1996), this opinion resolves most of the pressing questions this court has encountered in beginning to implement the Act.
 
 
 2
 1. Douglas Jackson, a federal prisoner, filed in the Southern District of Indiana an action under 28 U.S.C. § 2241 challenging his conviction. He named as respondent the warden of his prison. The district court promptly dismissed the action for lack of jurisdiction, observing that 28 U.S.C. § 2255 requires a collateral attack on a federal conviction or sentence to be pursued in the district of conviction (for Jackson, the Northern District of Illinois) rather than in the district of custody. The initial question is whether a petition under § 2241 is a "civil action" to which the Act applies. For the reasons Martin gave in holding that petitions under §§ 2254 and 2255 are not, we hold that a petition under § 2241 challenging one's sentence likewise is outside the Act. It is functionally a stage in the criminal proceeding; indeed, this petition is simply a § 2255 action in the wrong venue. A proper § 2241 action, concerning conditions of confinement, a deprivation of good time credits, or other matters that occur at the prison, by contrast, would not be a continuation of the criminal case, and it would be subject to the Act.
 
 
 3
 Jackson's mislabeled action falls outside the Act, but it need not linger on our docket. As the district judge held, Jackson must pursue an action under § 2255 in the Northern District of Illinois. Jackson's assertion that he has already filed a § 2255 petition in the Northern District, without obtaining relief, does not entitle him to move to another district and litigate anew. The judgment dismissing his petition is affirmed. Any additional request for relief under § 2255 requires the prior approval of this court under §§ 105 and 106(b)(3) of the Antiterrorism and Effective Death Penalty Act, Pub.L. 104-132, 110 Stat. 1214, amending 28 U.S.C. §§ 2244(b) and 2255. See Felker v. Turpin, --- U.S. ----, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996); Nunez v. United States, 96 F.3d 990 (7th Cir.1996); Roldan v. United States, 96 F.3d 1013 (7th Cir.1996).
 
 
 4
 2. Our opinion in Martin likewise answers the question presented by Walker v. Perre, No. 96-2685. The district court entered judgment in this § 1983 action on March 22, 1996. Walker's notice of appeal, dated June 30, reached the district court clerk's office on July 3. The appeal is jurisdictionally untimely. Should we simply dismiss the appeal for want of jurisdiction, or must we first assess the full filing and docketing fees against Walker? Martin holds that under the Act the appellate fees must be assessed and paid even if the appeal is frivolous; just so, we now hold, if the appeal is untimely. A solvent litigant must pay the filing and docketing fees for the privilege of initiating an appeal; dismissal on jurisdictional grounds does not lead the court to refund the appellant's money. Under 28 U.S.C. § 1915(b)(1), as amended by the Act, "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee." The impecunious prisoner is entitled to pay in installments, but the fee must eventually be paid in full. So we will assess and collect the $105 fees--but the appeal is dismissed for want of jurisdiction.
 
 
 5
 3. In Brown v. Feldkamp, No. 96-2405, a Bivens action filed by a federal prisoner, the notice of appeal was dated May 29, 1996, and was received by the district court clerk on June 3. Both dates are after April 26, and the fee-assessment provisions of the Act therefore apply. The district court permitted Brown to proceed in forma pauperis under the former law, and that status carried over automatically on appeal because the court did not certify that the appeal is frivolous or otherwise improper. (The district court's authority to revoke IFP status for appeal, formerly in § 1915(a), was moved to § 1915(a)(3) by the Act.)
 
 
 6
 Covino v. Reopel, 89 F.3d 105 (2d Cir.1996), holds that carryover IFP status does not affect the obligation to pay appellate fees, and we agree with this holding. Section 1915(b)(1) provides that "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee." (Emphasis added.) The dispositive events are "bringing" a civil action and "filing" an appeal. See Abdul-Wadood, 91 F.3d at 1025. Brown filed his appeal after April 26. He therefore must supply this court with "a certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the ... notice of appeal", § 1915(a)(2), if he wants to pursue the appeal (and we will dismiss the appeal for failure to prosecute if Brown does not comply with this requirement)--but whether he provides this statement or not, the fees will be assessed.
 
 
 7
 The clerk of the district court will instruct Brown's prison to remit the appellate fees from his trust account if $105 is available, and otherwise to send 20 percent of the current balance (or the average balance during the last six months, if higher), plus the monthly installments specified in the amended § 1915(b)(2). Brown should ensure that the prison officials transmit the necessary funds, and that if he moves to a new prison the obligation moves with him. Now that payment of the filing fees is obligatory, we will take nonpayment (for any reason other than destitution) as a voluntary relinquishment of the right to file future suits in forma pauperis--just as if the prisoner had a history of frivolous litigation, and § 1915(g) required prepayment. See Abdul-Wadood; cf. Support Systems International, Inc. v. Mack, 45 F.3d 185 (7th Cir.1995); Sassower v. ABA, 33 F.3d 733 (7th Cir.1994). The clerk of the district court should keep tabs of the payment history when fees are assessed, and pass information about nonpayment to the clerk of this court so that judges throughout the circuit may be informed and respond appropriately.
 
 
 8
 4. David Thurman, the plaintiff in a § 1983 action, is in a position subtly different from Brown's. Thurman filed an untimely notice of appeal on December 13, 1995, and on January 4, 1996, the district court retroactively enlarged the time for appeal under Fed. R.App. P. 4(a)(5). Eight days later, the district court denied Thurman permission to proceed on appeal in forma pauperis after finding that the appeal is frivolous. On March 4, 1996, Thurman asked this court to certify that the appeal is not frivolous, so that he may proceed IFP. That motion is pending; meanwhile the Act came into force, presenting the question whether appellate fees must be assessed against Thurman before the motion may be addressed.
 
 
 9
 We stressed in Abdul-Wadood, and again when addressing Brown's situation, that the Act requires fees to be assessed and collected for bringing a civil action or filing an appeal. This leads us to agree with White v. Gregory, 87 F.3d 429 (10th Cir.1996), that fees need not be assessed under the Act when the appeal was filed before April 26. To the extent Covino holds that prosecution of an appeal filed before April 26 requires an assessment of fees, we disagree. This is not because we accept White's unreasoned assertion that the Act does not "apply" to cases in which the notice of appeal was filed before April 26. Several provisions in the Act may be applied to pending cases, as Covino properly concluded. E.g., 28 U.S.C. § 1932, which permits a court to revoke a plaintiff's good time credit at the conclusion of a suit it finds to be malicious or supported by fabricated evidence. For the reasons given by Covino and Abdul-Wadood, we think that the Act generally applies to pending cases. Compare Lindh v. Murphy, 96 F.3d 856 (7th Cir.1996) (en banc) (same conclusion for most provisions of the Antiterrorism and Effective Death Penalty Act), with Burris v. Parke, 95 F.3d 465 (7th Cir.1996) (en banc) (exception for detrimental reliance on prior rules). The point here, however, is that the Act itself names the events that require the assessment and payment of fees: bringing a case, and filing an appeal. Once these milestones have been passed, fees do not attach to later activities. Cf. Landgraf v. USI Film Products, 511 U.S. 244, 275 n. 29, 114 S.Ct. 1483, 1502 fn. 29, 128 L.Ed.2d 229 (1994); Diaz v. Shallbetter, 984 F.2d 850 (7th Cir.1993).
 
 
 10
 Did Thurman "file" his appeal before April 26 for purposes of the Act? In one sense the answer is obviously yes; the district court stamped the appeal "filed" last December. Getting a piece of paper to the court is not necessarily the end of things, however, because the district court refused to allow Thurman to proceed IFP, at a time when such permission was essential for those who could not prepay the entire fee. Our court has concluded that a complaint initiating a civil action is not fully "filed"--at least, not filed for the purpose of starting the time to serve the defendants--until the district court acts on a motion for leave to proceed in forma pauperis. See Robinson v. America's Best Contacts and Eyeglasses, 876 F.2d 596 (7th Cir.1989); see also Williams-Guice v. Chicago Board of Education, 45 F.3d 161 (7th Cir.1995); but see Gilardi v. Schroeder, 833 F.2d 1226, 1233 (7th Cir.1987) (deposit of the complaint with the clerk satisfies the statute of limitations, at least when the court later grants permission to proceed IFP). When permission to proceed IFP is essential, a document tendered to the clerk is held until the court has decided what to do.
 
 
 11
 Litigants such as Thurman can be finagled by the combination of this delay and the new statute into a liability they never anticipated. Thurman lodged the notice of appeal and request to proceed IFP before the mandatory-assessment rules were enacted. Without pretending that this is the only possible reading of the Act, we think that the best understanding is that an appeal lodged before April 26, but ineffective because the appellant lacks IFP status, does not become "filed" until the motion has been acted on, one way or the other. Martin held that for appeals filed after April 25, payment (at least assessment) must precede any determination of frivolousness; for appeals lodged before April 26, however, the sequence is the reverse. And to prevent the assessment of a fee against a litigant who may not have anticipated this possibility, we will give Thurman (and any similarly situated litigants) notice and an opportunity to dismiss the appeal before taking the step that locks in the obligation to pay.
 
 
 12
 5. Marshall Jackson, the plaintiff in another § 1983 action, filed his notice of appeal sometime between April 24 and May 2, 1996. The notice is dated April 24, which could be its "filing" date under Fed. R.App. P. 4(c)--and therefore under the Act as well, see Martin, 96 F.3d at 855 if it was deposited then in the prison mail system, but filing could have occurred as late as May 2, when it was stamped "filed" by the clerk's office in the district court. Under the approach we have just spelled out, Jackson must pay the filing and docketing fees (via installments, if necessary) if the notice of appeal was "filed" on or after April 26, but, if it was filed on April 24 or 25, the former law applies. The district court entered an order permitting Jackson to proceed on appeal in forma pauperis, but it did not either determine when the appeal was "filed" or assess the $105 fee that is required if the appeal was filed on or after April 26. We remand the record in this case so that the district court may take the necessary steps.
 
 
 13
 To sum up: In Thurman v. Roper (No. 96-1062) the appellant has 21 days to consider whether to dismiss his appeal and avoid assessment of the appellate fees. Failure to file within that time a certified copy of the trust fund account statement required by § 1915(a)(2) will be taken as equivalent to a decision to dismiss the appeal. In Jackson v. Neitzke (No. 96-2109) the record is remanded so that the district court may determine whether it is necessary to assess the appellate fees. In Brown v. Feldkamp (No. 96-2405) the appellate fees will be assessed under the Act, and the case will proceed to decision if Brown submits the certified copy of the trust fund account statement within 21 days; but by failing to submit this statement Brown (unlike Thurman) cannot avoid assessment and collection. In Walker v. Perre (No. 96-2685) the appellate fees are assessed, and the appeal is dismissed for want of jurisdiction. In Jackson v. Clark (No. 96-3096) the Act does not apply, and the judgment is affirmed.